IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| WILLIAM TRACY FOWLER,<br><br>                    Plaintiff,<br><br>   vs.<br><br>WESTMINSTER COLLEGE OF SALT LAKE,<br><br>                 Defendant. | **MEMORANDUM DECISION AND ORDER DENYING WESTMINSTER'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO F.R.C.P. 50(b)**<br><br>Case No. 2:09-cv-591-DN<br><br>District Judge David Nuffer |

On May 23, 2012, the jury in this matter returned a verdict in favor of Plaintiff William Tracy Fowler on his claim for discrimination under the Americans With Disabilities Act (ADA) against Defendant Westminster College of Salt Lake, awarding compensatory damages in the amount of $500,000.[1]  Westminster had filed a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) at the close of Fowler's evidence.[2]  The court took the Rule 50(a) motion under advisement and submitted Fowler's discrimination claim to the jury.

On June 20, 2012, Westminster renewed its motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), arguing Fowler failed to present sufficient evidence at trial to support his ADA discrimination claim.  Specifically, Westminster argues Fowler did not establish that he was disabled within the meaning of the ADA, he was qualified to perform the essential functions of his job, and his termination resulted from discrimination against him by Westminster on the basis of his disability.  To prevail on his discrimination claim, Fowler was required to prove: "(1)

---

[1] Verdict Form ("Verdict"), docket no. 194, dated May 23, 2012.  The verdict has since been remitted to $300,000 pursuant to 42 U.S.C. § 1981a(b)(3)(D).  Order Granting Motion for Remittitur Under 42 U.S.C. § 1981a(b)(3)(D), docket no. 247, dated August 31, 2012.

he [was] a 'disabled' person under the ADA; (2) he [was] qualified to perform the essential functions of the job in question; and (3) he was discriminated against because of his disability."[3]

As outlined below, Fowler presented evidence sufficient to support the jury's verdict on each of the elements of his ADA discrimination claim. Accordingly, Westminster's Motion for Judgment as a Matter of Law Pursuant to F.R.C.P. 50(b) is DENIED.

STANDARD OF REVIEW

A party is entitled to judgment as a matter of law "only if the court concludes that all of the evidence in the record . . . [reveals] no legally sufficient basis for a claim under controlling law."[4] The court must draw all reasonable inferences in favor of the nonmoving party and may not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury."[5]

DISCUSSION

I.      Whether Fowler was Disabled.

Under the ADA, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."[6] At trial, Fowler asserted that his addiction to opiates constituted a disability under the ADA. The jury agreed.[7]

Westminster argues that Fowler failed to demonstrate his addiction substantially limited one or more of his major life activities, citing admissions by Fowler that as an addict he was still

---

[2] Motion to Dismiss as a Matter of Law [Rule 50 FRCP], docket no. 180, dated May 17, 2012.

[3] *Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1185 (10th Cir. 2011).

[4] *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009) (internal quotations omitted).

[5] *Id.* (internal quotations omitted).

[6] 42 U.S.C. § 12102(2) (2005).

[7] Verdict at Question No. 1.

able to care for himself, drive a car, perform his job, and function normally in society.[8] However, in *Nielsen v. Moroni Feed Co.*,[9] the Tenth Circuit stated that "the mere status of being an illegal drug user may invoke protection under the ADA."[10]  The *Nielsen* court went on to conclude that being "regarded as" an addict — in contrast to actually being an addict — constitutes a disability only "if the employer perceives the disability to substantially limit a major life activity."[11]

Thus, under *Nielsen*, Fowler's actual addiction is presumed to have limited one or more of his major life activities, eliminating the need for separate proof on that point.  Subsequent Tenth Circuit panels have stated differing views on *Nielsen*.  The panel in *Mauerhan v. Wagner*[12] restated the *Nielsen* proposition that "the status of being an alcoholic or illegal drug user may merit [ADA] protection."[13]  However, in *Burris v. Novartis Animal Health U.S., Inc.*[14] the panel interpreted *Nielsen* as having "implicitly held that drug addiction is not a per se disability" — collapsing the two statements of *Nielsen* into one.[15]  This court believes the distinction made by the *Nielsen* court between actual addicts and individuals regarded as addicts should not be discarded.  Moreover, although it does not apply to this case, the ADA Amendments Act of 2008 modified the definition of "disability" to clarify that an ADA plaintiff who was regarded as having an impairment need not prove the employer also perceived that the impairment interfered with a major life activity, thereby legislatively overruling the *Nielsen* holding for cases arising

---

[8] May 17, 2012 Trial Tr. 274:13-275:13.

[9] *Nielsen v. Moroni Feed Co.*, 162 F.3d 604 (10th Cir. 1998).

[10] *Id.* at 609.

[11] *Id.*

[12] *Mauerhan v. Wagner Corp.*, 649 F.3d 1180 (10th Cir. 2011).

[13] *Id.* at 1185 (internal quotations omitted).

[14] *Burris v. Novartis Animal Health U.S., Inc.*, 309 Fed. Appx. 241, 250 (10th Cir. 2009) (unpublished).

[15] *Id.* at 250.

after 2008.[16]  In light of this later amendment, the court will not expand the *Nielsen* decision

beyond its stated scope with respect to pre-amendment ADA law.  Moreover, Fowler did testify

that his addiction to opiates affected his ability to think and sleep, both of which have been

recognized as major life activities.[17]

Accordingly, the court declines to override the jury's finding that Fowler was disabled.

II.      Whether Fowler was Qualified.

A "qualified individual with a disability" under the ADA must be able to perform the

essential functions of his job with or without reasonable accommodation.[18]  Where the disability

in question is a drug addiction, an employee is not a "qualified individual with a disability" if he

is "currently engaging in the illegal use of drugs."[19]  The jury was specifically asked and found

that Fowler was both disabled and qualified.[20]

Westminster argues Fowler failed to establish that he was a qualified individual with a

disability because he was currently engaging in the illegal use of drugs when he was terminated.

Specifically, Westminster asserts that Fowler's admissions, and the drug test administered by

Westminster, prove that Fowler was using Carisoprodol (Soma) and Hydrocodone (LorTab) in

excess of his prescriptions and that he was using Valium without a prescription.

Even assuming that taking prescription drugs in excess of the amounts prescribed

constitutes the "illegal" use of drugs — a proposition for which Westminster has provided no

---

[16] 42 U.S.C. § 12102(3) (2012).

[17] May 17, 2012 Trial Tr. 312:15-18; *Aragon v. Life Quotes, Inc.*, No. 03CV02440, 2005 WL 1661737, at *10 (D. Colo. Jul. 15, 2005) (thinking); *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1218 n.10 (10th Cir. 2010) (sleeping).

[18] 42 U.S.C. § 12111(8) (2005).

[19] 42 U.S.C. § 12114(a) (2005).

[20] Verdict at Question Nos. 1 and 2.

authority and to which Westminster's experts could not testify[21] — Fowler presented sufficient evidence at trial to support a finding that he was not currently engaging in the illegal use of drugs. Fowler testified that he had not taken more of anything than he was prescribed.[22] Dr. Paul Teynor (the doctor hired by Westminster to review the results of Fowler's drug test and on whose opinion Westminster claimed it relied to terminate Fowler) admitted that he cannot be certain whether or not Fowler was taking more Hydrocodone than he was prescribed.[23] Dr. Teynor did testify that Fowler had taken more Soma than he was prescribed based on the results of Fowler's drug test. He admitted, however, that a urine test (like the one administered to Fowler) cannot show how much of a drug was taken.[24] Fowler admitted that he at times took three Soma in a day, which would have exceeded his two-a-day prescription. This was, however, still within the manufacturer's recommended daily dose of three to four tablets per day, and Dr. Teynor testified that Soma is often prescribed to be taken as needed.[25] Finally, evidence was presented that Fowler had a prescription for Valium that was possibly filled at either Shopko or Walgreens, but that records of these prescriptions were not available.[26] There was therefore no evidence at trial that Fowler took more Valium than he was prescribed.[27] Drawing all reasonable inferences in favor of Fowler, the jury reasonably concluded Fowler was not currently engaging in the illegal use of drugs.

---

[21] May 16, 2012 Trial Tr. 54:15-20, 63:8-10.

[22] May 17, 2012 Trial Tr. 220:19-221:1, 228:5-7.

[23] May 16, 2012 Trial Tr. 28:16-21. Fowler testified that he was able to take Hydrocodone without relapsing by simultaneously taking Suboxone. May 17, 2012 Trial Tr. 195:19-24.

[24] May 16, 2012 Trial Tr. 19:23-20:3.

[25] May 14, 2012 Trial Tr. 17:5-9; May 16, 2012 Trial Tr. 30:1-13.

[26] May 17, 2012 Trial Tr. 254:17-19; May 14, 2012 Trial Tr. 29:20-22; May 16, 2012 Trial Tr. 48:11-16.

[27] *See* Plaintiff's Ex. No. 64.

Westminster also argues that Fowler did not prove he was able to perform the essential functions of his job, citing statements made on Fowler's disability applications and Fowler's testimony that he could not lift 50 lbs. as required by his job description.  However, Fowler testified at trial that he was able to do his job with the help of other Westminster employees, who were able to lift boxes of paper and other heavy objects.[28]  The statements in Fowler's social security and long-term disability applications are consistent with this testimony, relating either to Fowler's inability to lift 50 lbs. or to the physical maladies associated with two accidents that occurred in August 2006, nearly a year after Fowler's termination.[29]  The jury could have reasonably concluded that Fowler's application for and receipt of disability benefits, which involved substantively different disability determinations, was consistent with his claim that he could, with reasonable accommodation, perform the essential functions of his job when he was terminated on November 1, 2005.[30]

The court will therefore not disturb the jury's finding that Fowler was a qualified individual with a disability.

III.    Whether Fowler's Termination Was Discriminatory.

To prevail on his ADA discrimination claim, Fowler had to prove that Westminster terminated him "because of [his] disability."[31]  Westminster contends that Fowler failed to draw a sufficient connection between his disability and his termination and that Westminster proved it relied in good faith on the results of Fowler's drug test in terminating Fowler pursuant to its Drug and Alcohol Use Policy.  The jury disagreed, finding both that Fowler's disability was a

---

[28] May 17, 2012 Trial Tr. 178:16-25.

[29] Defendant's Ex. Nos. 42, 44, 45, 38, 39, 46, 70, 64, and 90.

[30] *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999).

[31] 42 U.S.C. § 12112(a) (2005); *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1147 (10th Cir. 2011).

motivating factor in Westminster's decision to terminate him, and that Westminster did not honestly believe and act in good faith on its stated reasons for terminating Fowler.[32]

Viewed in the light most favorable to Fowler, Fowler presented evidence on which a reasonable jury could conclude that Westminster fired him because of his opiate addiction, and that the drug test was pretext for discrimination.[33]  Fowler testified that during his rehabilitation treatment in the summer of 2004 his supervisor and long-time friend, Richard Brockmyer, informed him that when Fowler returned to work, their relationship would be "all business, no friends."[34]  After Fowler's return to work, Brockmyer started regularly visiting the print shop to check on Fowler, resulting in complaints by Fowler to Steve Morgan, Brockmyer's supervisor, in and around April 2005.[35]  In June 2005, Brockmyer gave Fowler his first negative evaluation in the 21 years Fowler had worked at Westminster, which lead to a later Performance Improvement Plan (PIP) in September 2005.[36]  Evidence was presented that Brockmyer inappropriately changed the criteria by which Fowler was evaluated.[37]  Additionally, the negative evaluation and PIP came despite multiple glowing reviews of Fowler from other Westminster employees.[38]  Then Fowler was terminated less than two months later for supposedly taking more Soma than

---

[32] Verdict at Question Nos. 3 and 4.

[33] *Rivera v. City and County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) (pretext can be shown by "weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered reasons.").

[34] March 17, 2012 Trial Tr. 195:25-196:18.

[35] March 17, 2012 Trial Tr. 197:5-198:11; Plaintiff's Ex. No. 1.  Westminster makes much of the six months between Fowler's April 2005 written complaint and his November 1, 2005 termination.  However, the temporal proximity between protected activity and adverse employment action is tied to Fowler's retaliation claim, not his discrimination claim.  For purposes of the discrimination claim, the written complaint is one of a series of events that the jury reasonably concluded led to Fowler's discriminatory termination.

[36] Plaintiff's Ex. Nos. 8-25; Defendant's Ex. No. 2.

[37] May 15, 2012 Trial Tr. 107:21-113:12, 133:20-140:13. May 16, 2012 Trial Tr. 179:15-17.

[38] Plaintiff's Ex. No. 28.

he was prescribed based on conflicting reports, inadequate investigation, and the results from a questionable drug test that were ultimately consistent with Fowler's lawful prescriptions.[39]

This evidence formed a legally sufficient basis for the jury's finding that Fowler's termination was discriminatory and that the drug test was a faulty pretext for discrimination. Westminster has not met its burden for judgment as a matter of law under Fed. R. Civ. P. 50(b).

CONCLUSION AND ORDER

As the record contains evidence sufficient to support the jury's verdict in favor of Fowler on his ADA discrimination claim,

IT IS HEREBY ORDERED that Westminster's Motion for Judgment as a Matter of Law Pursuant to F.R.C.P. 50(b) (docket no. 218) is DENIED.

DATED this 17th day of September, 2012.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[39] Memorandum Opposing Defendant's Motion for Judgment as a Matter of Law Pursuant to F.R.C.P. at 9-14, 29-30, docket no. 252, filed on Sep. 6, 2012.